ACKER ET AL. *v.* UNITED STATES ET AL.

No. 655.   Argued April 3, 6, 1936.—Decided May 18, 1936.

*Mr. George I. Haight,* with whom *Messrs. John S. Boyd* and *M. K. Hobbs* were on the brief, for appellants.

*Assistant Attorney General Dickinson,* with whom *Solicitor General Reed* and *Messrs. Wendell Berge* and *G. N. Dagger* were on the brief, for appellees.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

September 23, 1932, the Secretary of Agriculture, acting under the Packers and Stockyards Act, 1921,[1] ordered an inquiry and gave notice of a hearing to determine the reasonableness of rates charged by market agencies doing business at the Union Stockyards in Chicago. After protracted hearings and argument, he made findings of fact, announced his conclusion that the existing rates were unreasonable,. and fixed new maximum rates. The appellants, who conduct market agencies, petitioned for rehearing. This the Secretary denied but by a supplemental order he increased some rates. An amended petition for rehearing was dismissed and the appellants then filed their bill in the district court seeking an injunction against enforcement of the original and supplemental orders. The case was heard by three judges who granted an interlocutory injunction. At final hearing the appel-

---

[1] 42 Stat. 159; U. S. C., Tit. 7, Chap. 9.

lants offered in evidence the record of the proceedings before the Secretary and also proffered additional testimony which was received over the appellees' objection and subject to their exception. The court dismissed the bill, holding that the Secretary's findings were supported by substantial evidence. In the light of the evidence before him, and that adduced at the trial, the court adopted the Secretary's findings as its own; adjudged the prescribed rates reasonable, and concluded the orders entered were not arbitrary and did not operate so as to take the agencies' property without due process of law.

The appellants contended in the court below, and here insist, that the Secretary failed to apply the principles for ascertaining reasonable rates approved by this court in *Tagg Bros. & Moorhead* v. *United States,* 280 U. S. 420; improperly invaded the field of management in determining reasonable unit costs; used an improper test period for ascertaining costs; disregarded the evidence in fixing an allowance for salesmanship costs and expense of getting and maintaining business, and arbitrarily denied the petitions for rehearing. These errors, so they claim, resulted in the fixing of unreasonable and confiscatory rates.

The services performed by commission merchants in the Chicago yards are substantially the same as those described in the opinion in *Tagg Bros. & Moorhead* v. *United States, supra,* touching the market agencies at the Omaha stockyards. Little capital is invested; the business is the rendering of personal services for which charges are made according to a uniform schedule. In ascertaining whether the rates are reasonable the prime factor is the agencies' costs, of which the most important are salesmen's compensation and the expense of getting and maintaining business. The old schedule of rates, like that prescribed for the Omaha yards, and considered in *Tagg Bros. & Moorhead* v. *United States, supra,* was

based upon carload lots. In the present case the Secretary determined that a more accurate and reasonable schedule could be prepared on the basis of the consignment rather than that of the carload. In order to ascertain unit costs it was necessary for him to break down the total costs into three principal items,—salaries, other expenses, and interest. These in turn were subdivided thus: salaries into selling and buying, yarding, business getting and maintaining, office and administrative; other expenses into yarding, office, business getting and maintaining, administrative and general, and risk. Interest was calculated on the value of fixed assets, inventory of supplies, and cash working capital equivalent to one month's expense allowance. Costs were thus determined for each sort of livestock handled. In arriving at the rate an allowance was made for management and uninsurable risks; that is, for profit. The Secretary stated that he adopted the same principles for determining rates as were approved in the *Tagg Bros.* case. The complaints against the rates are not directed to these principles but to their application in the present case. We think they are without merit.

1. In general, the Secretary's findings are challenged as not giving proper weight to the past experience of the market agencies. As the findings demonstrate, full consideration was given to the costs incurred, but in ascertaining a reasonable unit cost as the basis of a uniform rate the Secretary was not bound to, and indeed he could not, adopt any one agency's costs or an average of the costs of all of them; to do so would be to leave out of consideration relative size, relative volume, and relative efficiency of individual agencies.

2. The attack upon the allowance for salesmen's salaries is bottomed on the fact that the Secretary refused to adopt an average of salaries heretofore paid. He was not required so to do. What is a typical salesman's

performance, and a fair recompense for it, is a matter of judgment based upon all the facts. That the Secretary considered and weighed the evidence is clearly shown by his findings; that he exercised an informed judgment upon it cannot successfully be denied.

Many proprietors of agencies take part in the activities of buying, selling, yarding, etc. As they own the enterprise they receive no salaries. Their recompense is the profit realized from the business. What each of them thus earned during the test period was disclosed at the hearing. The appellants insisted that the Secretary should in his cost computations fix a salary allowance for such owners without reference to their actual earnings. In order to furnish a basis for a finding in this behalf they procured independent persons, said to have knowledge of the subject, to make appraisals of the value of the services of these owners and introduced the appraisals in evidence. They insist that because the Secretary in arriving at selling costs ignored these hypothetical salaries his action was arbitrary and unreasonable. We cannot so hold. We think it evident that he was justified in considering conditions as he found them and refusing to load the business with a cost having no relation to actualities.

3. With respect to the cost of getting and maintaining business, the Secretary had before him a complete analysis of the actual expenditures made during an adequate test period. He had ample evidence pro and con as to the necessity and wisdom of these expenditures. It appears that he weighed the proofs, found that in certain respects the expenditures had been extravagant and wasteful, and, in the exercise of judgment, arrived at a cost he considered fair and adequate. The contention is that the amount to be expended for these purposes is purely a question of managerial judgment. But this overlooks the consideration that the charge is for a public

service, and regulation cannot be frustrated by a requirement that the rate be made to compensate extravagant or unnecessary costs for these or any purposes. We are not persuaded that the conclusions as to proper allowances on this head were without substantial support in the record.

4. It is charged that the Secretary erred in using a single year, 1932, as a test period. For detailed figures he used only that year, but he had before him a cost analysis for 1931, a survey of the economic history of the Chicago market and the factors which have influenced it since its establishment in 1865, a record of the annual receipts for each year from 1865 to 1932, and a tabulation of the monthly receipts for the years 1923 to 1932, inclusive. In addition he had data as to the relation of the volume of receipts at this market between 1920 and 1932, inclusive, to the total receipts of all the important livestock markets in the country; the ratios of rail and truck receipts for the years 1923 to 1932, inclusive, and a record of seasonal variations in rail and truck receipts for 1932. He had studies showing distribution of receipts amongst the different classes of animals in each year from 1923 to 1932, inclusive. His findings show that he gave consideration to changing economic conditions affecting the Chicago market. They show that he used 1932 as a test period because it was favorable to the appellants, since the receipts at Chicago in that year were lower than those for any of the preceding ten years, and therefore unit costs calculated on the basis of receipts in that year would naturally tend to be higher than those of preceding years. In the light of the proofs and the findings, we are unable to find anything arbitrary or unreasonable in the selection of the data on which to base a judgment.

5. The appellants assert the Secretary acted arbitrarily in refusing to rehear the case. Hearings began

May 15 and ended November 7, 1933. December 13 the matter was argued. January 8, 1934, the original order was entered prescribing maximum rates effective February 7, 1934. On the day last mentioned the appellants presented a petition for rehearing which is not in the record. From the summary of its contents found in the bill it appears that petitioners claimed the reduction in revenues consequent upon the new rates made it impossible for them to pay necessary operating expenses which had been increased by the National Recovery Act and the Agricultural Adjustment Act; that costs should have been calculated by using the draft rather than the consignment as a basis; that the rates were inconsistent with the level of costs and the trend of costs during 1933; and that the petitioners desired to prove the efficiency of their methods of handling animals during 1933. Data in support of the petition were tendered and received. The Secretary reconsidered his prior decision, refused a rehearing, and ordered certain increases in the rates. Within a month appellants presented an amended petition for rehearing which is not in the record but is sketched in the bill of complaint. The reasons advanced in support of the application are alleged to have been: a net reduction of twenty-five per cent. of gross income as compared with 1933 would result from the new schedule; such a reduction would render petitioners' income insufficient to pay the costs of doing business; the schedules promulgated were based on findings for the years 1931 and 1932, whereas, during 1933 and 1934, profound changes occurred which adversely affected the petitioners' business; the federal legislation of 1933 increased petitioners' expenses. It thus appears that although the appellants had opportunity until one month prior to the making of the order to produce any evidence as to conditions prevailing during 1933, and to call attention to any conclusions to be drawn therefrom, they delayed

doing so until shortly after the order was issued. The delay in presenting proofs concerning these matters is unexplained.[2]

The amended petition was filed about three months after the original order issued. It is inconceivable that economic conditions had so altered in this brief period as to demonstrate that the new schedule of rates, if just when promulgated, had become unjust and oppressive. The schedule should have been given a trial and any alteration or modification should have been asked in the light of more extensive experience. We are unable to find anything arbitrary or unreasonable in the denial of the petitions.

6. The appellants insist that they were entitled to a trial *de novo* on the issue of confiscation and on the issue of the denial of the petitions for rehearing.

A majority of the District Court said:

"Having considered the new evidence offered for the first time in this court, and all the evidence offered before the Secretary, and having concluded, as we have, that there is no showing of confiscation, we find it unnecessary to determine whether the evidence offered for the first time in this court was admissible. *Tagg Bros. & Moorhead* v. *United States*, 280 U. S. 420."

One of the judges, in a separate opinion, stated:

"I do not concur in the findings of this court which adopt in toto the findings of fact made by the Secretary of Agriculture. Some of them, particularly those relating to salesmanship costs and allowances for business getting and maintaining expenses are, in my opinion, against the weight of evidence. However, I am not prepared to say that the findings were made without any evidence to support them. I join, therefore, in the entry of the decree dismissing the bill."

---

[2] Compare *United States* v. *Northern Pacific Ry. Co.*, 288 U. S. 490.

It is to be noted that in spite of the allegations of the bill the case does not involve any question of confiscation. The appellants employ little physical property in their business and no complaint is made as to the allowance of interest on such as they do employ. They render a personal service and the issue before the Secretary was whether the uniform schedule of rates for that service was or was not reasonable. On this issue he was bound to afford the appellants due process. In fact he gave them adequate notice and accorded them a full hearing. He carefully weighed the evidence, as demonstrated by voluminous and detailed findings; he exposed with candor the facts and considerations forming the basis of his ultimate conclusions. The appellants had opportunity for a full presentation of their case. Under § 316 of the Packers and Stockyards Act the district court sits not to afford a trial *de novo* but to review the administrative action. *Tagg Bros. & Moorhead* v. *United States, supra,* p. 443. No reason appears why the appellants could not be afforded due process of law by a review of any questions they deemed material upon the record as made in the administrative proceeding, or why the delay, expense and burden of a new trial should be imposed simply because they demanded it. The issue before the Secretary was not confiscation but the reasonableness of a charge for personal service. No new or different issue could have been presented upon a trial *de novo*. We think the court correctly held that its function was the consideration of questions raised upon the record made before the Secretary.

Little need be said concerning the claim that a trial *de novo* should have been afforded the appellants on the question of their right to a rehearing. As has been said, the bill of complaint summarizes the petition and amended petition for rehearing and asserts that the Secretary arbitrarily refused to grant them. No evidence in

support of this allegation was tendered in the District Court. It is idle to discuss the right of the appellants to make a showing in this behalf in the District Court when in fact none was made or attempted and the court was left, as we are, with no light on the subject save what is afforded by the record before the Secretary and the aver-- ments of the complaint.

The decree is

*Affirmed.*