## BOWLES v. INDIANAPOLIS RAILWAYS, Inc.

### Civ. A. No. 1074.

District Court, S. D. Indiana, Indianapolis Division.

Jan. 4, 1946.

Addison M. Dowling, of Indianapolis, Ind., for plaintiff.

Gilliom, Armstrong & Gilliom, Albert M. Campbell, and Thompson, O'Neal & Smith, all of Indianapolis, Ind., for defendant.

BALTZELL, District Judge.

On December 21, 1945, plaintiff filed a complaint in this court praying for a temporary injunction against the defendant "from charging or collecting any fare in excess of the fares in force on September 15, 1942 * * * unless and until the Public Service Commission of Indiana has held a hearing on the consideration of the defendant's increase of such fares at which plaintiff will have an opportunity to intervene and has entered an order permitting such increase in accordance with the provisions of the Public Service Commission Act of Indiana and the Stabilization Act of 1942". The complaint also asks for a permanent injunction upon final hearing.

A hearing was had upon the motion for a temporary injunction, and the facts upon the hearing were stipulated, so there is no controversy at this time as to the facts.

The facts are that the plaintiff is the duly appointed and acting Administrator of the Office of Price Administration and has been at all times with which we are here concerned, and, as such, has authority to institute this action; that the defendant is an Indiana corporation engaged as a common carrier in the carriage of passengers for hire within metropolitan Indianapolis, Indiana; that in the conduct of its business as a common carrier it operates

street cars, trackless trolleys and motor busses. It is a public utility and, as such, is under the laws of Indiana, subject to the supervision of the Public Service Commission of Indiana in so far as its schedule of rates is concerned. Its operations are wholly intrastate and are confined to the City of Indianapolis and suburban territory contiguous thereto located wholly within Marion County, and may be said to be a local mass transportation system. In other words, it operates a transportation system for the general public, and its means of transportation consist of street cars, trackless trolleys and motor busses. Its vehicles, whether cars, trolleys, or busses, are operated as a system, and the schedules are arranged for the convenience of the traveling public, both as to the places where passengers may enter and leave the vehicles, and as to convenience in the use of transfers which are issued to its passengers. It is, as heretofore stated, a mass transportation in which each of the three means of transportation is an integral part. No one of the three means of transportation serves exclusively any certain section of the city or suburban district or any class of individuals. Each serves those who care to take advantage of its service.

The Public Service Commission, which is charged by law with the fixing of rates of public utilities in Indiana including street transportation systems, of its own motion began an investigation of defendant's rates on December 10, 1943. Numerous hearings were had by the Commission extending over a period of more than eighteen months, in which hearings the Public Counselor for Indiana, as provided by law and representing the traveling public, appeared and introduced evidence. Finally, on September 5, 1945, the Commission entered an order approving a schedule of rates for defendant which were temporary for a trial period of ninety days and to take effect on September 15. Notice of the several hearings was given by publication in the newspapers of Indianapolis. The new schedule of rates became effective by order of the Public Service Commission of Indiana as of September 15, but no notice was given by the defendant to plaintiff of the new rate schedule. Plaintiff complains of the failure on the part of the defendant to give him notice which he says was required under the Stabilization Act of 1942, 50 U.S. C.A.Appendix, § 961 et seq. The new schedule of rates is now in effect, and de-fendant has a petition pending before the Public Service Commission to make such rates permanent, which petition is assigned for hearing before the Commission on January 7 and 21, 1946. Plaintiff was served with notice on November 30 by defendant of the filing of such petition and has appeared specially before the Commission in that proceeding.

The Stabilization Act of 1942 provides, in part, "That no common carrier or other public utility shall make any general increase in its rates or charges which were in effect on September 15, 1942, unless it first gives thirty days notice to the President, or such agency as he may designate, and consents to the timely intervention by such agency before the Federal, State, or municipal authority having jurisdiction to consider such increase," 50 U.S.C.A.Appendix, § 961. Plaintiff is the person designated by the President to receive notice under the above statute. Referring to this statute, Procedural Regulation No. 11, Sec. 1300.901 defines a general increase in rates or charges "as any change in its rates, fares, classifications, rules, regulations' or practices which results in an increase in the charges for transportation * * * applicable to a *class of passengers* * * * as distinguished from an increase of rates or charges applicable to a *particular customer* * * *". (Our italics.)

There is no contention on the part of defendant that it gave any notice to plaintiff before putting into effect the new schedule of rates on September 15; in fact, it admits that no such notice was given. It is its contention that no such notice was required because "it renders but one kind of service to but one kind of passengers irrespective of types of vehicles used or of points of embarkation or debarkation, and that the whole riding public which it serves constitutes but one single class of passengers for which uniform rates and charges contained in said new schedule were fixed by the Commission, and that said new schedule of rates and charges does not constitute a general increase in the rates for such class". On the other hand, the plaintiff "contends that the service rendered by defendant to street car and trackless trolley car passengers is a service to a separate class and that the rates and charges provided in said new schedule for the service rendered to them constitutes a general increase in rates of such class of passengers".

■ Under the law of Indiana, Burns' Ann.St. § 54-101 et seq., the Public Service Commission is charged with the duty of approving schedules of rates for all public utilities, including street railway companies. As such Commission it may proceed to examine rates upon its own motion or upon petition of the utility, or any other person authorized to begin an investigation. Its duty is to see that rates are approved that are fair not only to the public that uses the services of the utility but to the utility, as well. As was said by the Supreme Court, in speaking of administrative tribunals such as the Public Service Commission, they "have power themselves to initiate inquiry, or, when their authority is invoked, to control the range of investigation in ascertaining what is to satisfy the requirements of the public interest in relation to the needs of vast regions and sometimes the whole nation in the enjoyment of facilities for transportation, communication and other essential public services." Federal Communications v. Pottsville Broadcasting Co., 309 U.S. 134, 60 S.Ct. 437, 441, 84 L.Ed. 656. See, also, Interstate Commerce Commission et al. v. City of Jersey City et al., 322 U.S. 503, 64 S.Ct. 1129, 88 L.Ed. 1420. Acting upon this authority, the Indiana Commission did, as heretofore observed, begin an investigation in December, 1943, looking to a determination of the question as to whether the schedule of rates of defendant then in effect was a fair schedule from the standpoint of both the public and the defendant. Numerous hearings were had during the following eighteen months and, as a result, the Commission entered the order heretofore referred to. True, the personnel of the Commission had completely changed during the progress of the investigation and hearings, but that, in no manner, affected the validity of the order entered on September 5. It must be presumed that the Commission, acting as an administrative body regardless of the personnel comprising that body, acted wisely and justly as it construed the facts in the interest of all concerned. The finding and order was entered a few weeks subsequent to the cessation of hostilities. The order was concurred in by the entire membership of the Commission and certain findings of fact were made by the Commission in the entry before the formal entry of the final order. The Commission found that,

"This proceeding was instituted on December 10, 1943 by the Commission on its own motion for the investigation of the rates and charges of Indianapolis Railways, Incorporated. None of the present members of the Commission were members of the Commission at the time the proceeding was instituted, nor was the present Public Counsellor an incumbent of that office at that time. The Commission as previously constituted heard some evidence which was presented by previous public counsellors. The proceeding was brought largely on the basis of war time operating conditions, which will no longer obtain since actual hostilities have ceased.

"On September 5, 1945 Indianapolis Railways, Incorporated, filed with the Commission, in its Tariff Department, a schedule of proposed uniform fares and charges, with September 15, 1945 as their effective date, subject to approval of the Commission. On the same day the Company filed with the Commission a written proposal for the settlement of this proceeding by the cancellation of its rate schedules now on file in the Tariff Department of the Commission and by the substitution therefor of said schedule of uniform rates for a trial period of three months from September 15, 1945."

Here follows the proposed schedule of rates. The Commission further found:

"An examination of the record in this proceeding discloses that one point of investigation was whether the Company's rates should be uniform with respect to all types of vehicles operated by it. The proposed schedule provides for such uniformity.

"The Commission finds that if the riders take advantage of the token fares provided in the proposed schedule for transportation on all types of vehicles a substantial saving will on the whole result to the riding public as against the fares and charges provided in the Company's existing schedules now on file with the Commission.

"The Commission finds that it is in the public interest that this proceeding under the above entitled cause be in all things terminated and that the said proposed schedule of uniform rates and charges be approved by the Commission to be effective on and after September 15, 1945 for a trial period of three months and until otherwise ordered by the Commission".

The pertinent part of the order follows: "It is therefore ordered by the Public Service Commission of Indiana that this proceeding under the above entitled cause be and hereby is in all things terminated; that the existing schedules of fares and charges of Indianapolis Railways, Incorporated, now on file with the Commission are hereby cancelled as of 12:01 A.M., September 15, 1945; and that the aforesaid schedule of uniform rates and charges be and hereby is approved, effective on and after 12.01 A.M., September 15, 1945 for a period of three months from said date and until otherwise ordered by the Commission"

It will be noted that the Commission found as a fact that the schedule of rates approved by it in such order provides. uniformity as to rates regardless of the vehicle used. It also found that if the riders purchase tokens as provided in the schedule "a substantial saving will on the whole result to the riding public as against the fares and charges provided in the company's existing schedule now on file with the Commission". Furthermore, "that it is in the public interest that * * * the said proposed schedule of uniform rates and charges be approved * * *". It is apparent that the Commission considered that defendant was serving one class only, namely, the riding public of Indianapolis and Marion County, and that the new schedule would not be discriminatory as was the old schedule, and that it would provide a saving to the riding public if advantage was taken of the use of tokens, etc.

While the order of the Commission is not under direct attack, yet it must, in effect, be set aside if the relief sought by plaintiff is granted. The only schedule of rates in existence is that now being charged which was approved by the Commission on September 5. An injunction prohibiting the charging of those rates would, in effect, set aside the only order of the Commission now existing approving a rate schedule, as the former schedule was, by such order, canceled as of 12:01 a. m. on September 15. The validity of the order of the Commission is not challenged in this proceeding, but if it were challenged, the Supreme Court has very clearly answered that challenge in the case of Interstate Commerce Commission et al. v. City of Jersey City et al., supra, wherein it said [322 U.S. 503, 64 S.Ct. 1134]: "'Moreover, the Commission's order does not become suspect by reason of the fact that it is challenged. It is the product of expert judgment which carries a presumption of validity. And he who would upset the rate order under the Act carries the heavy burden of making a convincing showing that it is invalid because it is unjust and unreasonable in its consequences.' Federal Power Commission v. Hope Natural Gas Co., 320 U.S. 591, 602, 64 S.Ct. 281, 288 [88 L.Ed. 333]. The Commission considered that it had, and we find no reason to doubt that it had, the evidence before it that was needful to the discharge of its duty to the public and to the regulated railroad."

 There is no provision in the law which requires the Commission to either notify plaintiff before entering an order approving a schedule of rates or to even make inquiry as to whether such notice was given by defendant. That is not essential to its jurisdiction. Plaintiff, however, contends in his brief that "since there was no compliance with the requirements of a plenary federal statute, the Commission's order approving the rates was a nullity", which means in law a void act or an act having no legal force or validity—invalid—null. That is simply another way of saying that the order of the Commission which was its act in approving the present schedule of rates is invalid and has no legal force because notice was not served upon it by defendant thirty days before the schedule of rates became effective under the order. The defendant had the responsibility of determining for itself whether or not the new schedule was a general increase as provided in the Stabilization Act, and whether notice was necessary. The fact that it believed that such rates were not a general increase and that, therefore, no notice was necessary, and none was given, does not, of itself, make the order of the Commission a nullity or invalid, as plaintiff contends. The Commission, having acquired jurisdiction, its order is valid. Furthermore, such order is not attacked in this proceeding, and can not be, unless the Commission and its members are made parties thereto. Indianapolis Water Co. v. Moynahan Properties Co., 209 Ind. 453, 198 N.E. 312; In re Engelhard & Sons Co., 231 U.S. 646, 34 S.Ct.

258, 58 L.Ed. 416. The Stabilization Act is intended to aid in the prosecution of the war and to prevent inflation. Active hostilities have ended; its object now is to curb and prevent inflation.

Before an injunction can issue in this case, the plaintiff must prove that the public will suffer irreparable injury, and that the efforts of the United States to control inflation in this period of extreme emergency will also suffer irreparable injury, as charged in the complaint, unless defendant is enjoined from further collecting the rates as provided in the schedule approved by the Public Service Commission on September 5. This burden he has not met. No irreparable injury will result to the public or to the United States in its effort to control inflation if the injunction is denied. Plaintiff may pursue the remedy now open to him by intervening in the proceeding pending before the Public Service Commission, if permitted by that body to do so, in which proceeding he has appeared. The Commission may permit him to intervene upon such terms as it may impose. If permitted, he may present such evidence as he may possess upon those subjects, that is, the effect of continuing the present schedule of rates upon the public and upon the United States in its effort to control inflation. It is apparent that the Commission's order complained of is only temporary in character, adopted for the purpose of ascertaining the effect thereof as applied to the economic condition immediately following the cessation of hostilities, and it may be that the Commission, in the hearings now scheduled before it will be impressed with evidence which may be presented to it by the plaintiff to such an extent that it will feel that justice requires an adjustment of the rates now in effect. Acker v. United States, 298 U.S. 426, 56 S.Ct. 824, 80 L.Ed. 1257. However, that is the responsibility of the rate-making body, the Public Service Commission of Indiana, and not of this court. Neither this court nor the plaintiff can fix rates for a public utility. That responsibility rests solely with the rate-making body of the state if the utility does only intrastate business, as provided by the law of that state. As said by Justice Roberts, in the case of Vinson v. Washington Gas Light Co., 321 U.S. 489, 64 S.Ct. 731, 735, 88 L.Ed. 883, "And, as we have noted, the Stabilization Act of October 2, 1942, did not alter this prohibition but required merely that no utility should generally increase rates in effect September 15, 1942, unless it first gave thirty days' notice to the President or his representative and consented to the timely intervention of that representative before the federal, state, or municipal authority having jurisdiction to consider the increase * * *." This court will presume that the Commission will act wisely in the interest of the public and of the United States in its effort to control inflation.

It has been heretofore observed that there is *one* legal schedule of rates only in effect and that schedule applies equally to every person using the transportation vehicles of defendant wherever they may live, wherever their destination if within the territory served by defendant's system. Those rates are also uniform. No discrimination is shown. They are fixed in a valid order of the Public Service Commission of Indiana. The rider may use any vehicle he desires and pay the same rate. There are many instances where the same individual uses all three vehicles in making one trip. He may ride a feeder bus, transfer to a street car and then continue by trackless trolley to his destination. The various lines of transportation of defendant permeate all parts of Indianapolis and Marion County. No certain type of vehicle serves any particular community or section exclusively but, as a single unit, the three types serve the public—a single class.

The case of Henderson, Price Administrator v. Washington, Marlboro & Annapolis Motor Lines, Inc., 77 U.S.App.D.C. 26, 132 F.2d 729, is to be distinguished from this case. In that case, the increase was apparent and applied to one line only, operating in interstate commerce. It did not apply to a situation where three types of vehicles are used to serve the same individuals in the same locality at a uniform rate. It is apparent that, in the Marlboro case, there was discrimination and an increase affecting but one class.

There being a valid schedule of rates charged by defendant approved by the Public Service Commission of Indiana, the only regulatory body having authority to approve rates and those rates being uniform to all passengers using defendant's system of transportation regardless of the type of vehicle used—a single class of passengers—there was no neces-

872

sity for defendant to notify plaintiff of the proposed new schedule before it became effective. No notice being required, the plaintiff has no cause to complain.

The temporary injunction will be denied.