**PAN AMERICAN PETROLEUM CORPORATION, Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent,**

**United Fuel Gas Company, Intervenor.**

**SUN OIL COMPANY, Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent,**

**Transcontinental Gas Pipe Line Corporation, Intervenor.**

**SUN OIL COMPANY, Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent,**

Transcontinental Gas Pipe Line Corporation, Texas Gas Transmission Corporation, United Fuel Gas Co., Intervenors.

UNION OIL COMPANY OF CALIFORNIA, Petitioner,

v.

FEDERAL POWER COMMISSION, Respondent,

Texas Gas Transmission Corporation, United Fuel Gas Company, Memphis Light, Gas & Water Division, City of Memphis, Tennessee Gas Transmission Co., Transcontinental Gas Pipe Line Corp., Intervenors.

TEXACO, INC., Petitioner,

v.

FEDERAL POWER COMMISSION, Respondent,

United Fuel Gas Company, Transcontinental Gas Pipe Line Corp., Intervenors.

UNION TEXAS PETROLEUM, a Division of Allied Chemical Corporation, Petitioner,

v.

FEDERAL POWER COMMISSION, Respondent,

Texas Gas Transmission Corporation, Memphis Light, Gas and Water Division, Intervenors.

PHILLIPS PETROLEUM COMPANY, Petitioner,

v.

FEDERAL POWER COMMISSION, Respondent,

Texas Gas Transmission Corporation, United Fuel Gas Company, Memphis Light, Gas & Water Division, City of Memphis, Transcontinental Gas Pipe Line Corporation, Intervenors.

Nos. 16787, 16929, 16978, 16794, 16963, 17006, 17055, 17118, 17268, 17298.

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 11, 1963.

Decided July 18, 1963.

Messrs. Justin R. Wolf, Washington, D. C., for petitioner in No. 17268, and Carroll L. Gilliam, Washington, D. C., for petitioner in Nos. 16787, 16929 and 16978 argued for all petitioners. Mr. William J. Grove, Washington, D. C., was also on the brief for petitioner in Nos. 16787, 16929 and 16978.

Miss Josephine H. Klein, Atty., Federal Power Commission, with whom Messrs. Richard A. Solomon, General Counsel, and Howard E. Wahrenbrock, Sol., Federal Power Commission, were on the brief for respondent.

Mr. Brooks E. Smith, New York City, with whom Mr. William C. Hart, New York City, was on the brief, for intervenor, United Fuel Gas Co., in Nos. 16787, 16929, 16978 and 17118.

Mr. Thomas F. Ryan, Jr., Washington, D. C., with whom Mr. Richard J. Connor, Washington, D. C., was on the brief, for intervenor, Transcontinental Gas Pipe Line Corporation, in Nos. 16794, 16963, 17006, 17055, and 17118.

Mr. George Spiegel, Washington, D. C., with whom Messrs. George E. Morrow, Memphis, Tenn., and Reuben Goldberg, Washington, D. C., were on the brief, for intervenor, Memphis Light, Gas & Water Division, City of Memphis, in Nos. 17055, 17268 and 17298.

Messrs. Robert E. May and Omar L. Crook, Washington, D. C., were on the brief for petitioner in Nos. 16794, 16963 and 17006.

Messrs. George D. Horning, Jr., Patrick G. Sullivan and Harry L. Albrecht, Washington, D. C., were on the brief for petitioner in No. 17055.

Messrs. Alfred C. DeCrane, Jr., and James J. Flood, Jr., Houston, Tex., were on the brief for petitioner in No. 17118.

Mr. Eugene E. Threadgill, Washington, D. C., was on the brief for petitioner in No. 17268.

Mr. Lambert McAllister, Washington, D. C., was on the brief for petitioner in No. 17298.

Messrs. Harry S. Littman, Jack Werner, Dale A. Wright and Melvin Richter, Washington, D. C., were on the brief for intervenor, Tennessee Gas Transmission Co., in No. 17055.

Messrs. Christopher T. Boland, George J. Meiburger, Washington, D. C., and Daniel K. O'Connell, Owensboro, Ky., were on the brief for intervenor, Texas Gas Transmission Corp., in Nos. 17006, 17055, 17268 and 17298. Mr. Thomas F. Ryan, Jr., Washington, D. C., also entered an appearance for intervenor Texas Gas Transmission Corporation.

Before BAZELON, Chief Judge, and FAHY and WASHINGTON, Circuit Judges.

BAZELON, Chief Judge.

Petitioners, six Louisiana gas producers, appeal from an order of the Federal Power Commission (Commission) re-

quiring them to refund amounts collected from their pipeline-purchasers [1] as costs of an additional Louisiana gas gathering tax of one cent per Mcf.[2] This tax, in effect from August 1 to November 30, 1958, was later held invalid by the Louisiana Supreme Court.[3]

In anticipation of litigation to test the validity of this tax, the Commission, on July 11, 1958, issued its Order No. 206 [4] allowing the producers to file rate schedule increases reflecting the additional tax, and providing for a one-day suspension of such increases to assure appropriate refunds in the event the tax was declared invalid.[5] Pursuant to this order, producers filed 746 rate schedule changes. The Commission, in a series of individual orders in July and August 1958, granted the increases, but provided that:

"Respondent shall refund at such times and in such amounts to the persons entitled thereto, and in such manner as may be required by final order of the Commission, the difference between the presently effective rates and charges and the proposed increased rates and charges hereby allowed to become effective in the event the additional tax of one cent per Mcf levied by the State of Louisiana is for any reason held to be invalid. Should such additional tax eventually be held invalid and the State of Louisiana makes refund,

with interest, of the tax monies collected pursuant to the said Act No. 8 of 1958, then, and in that event, a proportionate part of the interest so received by the Respondent herein shall be passed on and paid to the persons entitled thereto at such times and in such amounts, and in such manner as may be required by final order of the Commission."

Petitioners then filed with the Commission agreements to comply with the refund provisions of the suspension orders. Although the State is not required to refund illegal taxes unless they have been paid under protest,[6] petitioners, nevertheless, paid the tax without protest.

After the tax was declared invalid, the Commission, on February 21, 1961, ordered the producers to refund to "their respective purchasers the amounts collected under the respective agreements * * * together with a proportionate part of any interest received from the State of Louisiana." Petitioners and others sought rehearing which the Commission granted on April 19, 1961, and upon which the Commission issued an order on May 29, 1961, requiring refunds to purchasers only in the event, and to the extent that, petitioners received refunds from the State of Louisiana.[7]

This order was attacked by purchasers. Thus, on June 27, 1961, Memphis Light, Gas and Water Division (Memphis) filed

1. United Fuel Gas Company, Texas Gas Transmission Corporation, Tennessee Gas Transmission Company and Transcontinental Gas Pipe Line Corporation, intervenors in this action.

2. Act No. 8, approved June 16, 1958; 47 La.Rev.Stat.1950 § 678 (Cum.Supp.1961). The tax was suspended by Act No. 3, Ex.Session, 1958; 47 La.Rev.Stat. (1950) § 681.1 (Cum.Supp. 1961).

3. Bel Oil Corp. v. Fontenot, 238 La. 1002, 117 So.2d 571 (1959); Southern Natural Gas Co. v. Roland, 240 La. 471, 123 So. 2d 891 (1960).

4. 20 FPC 28, 23 Fed.Reg. 5431.

5. The relevant part of the order provides: "A number of affected natural-gas companies have advised the Commission

that litigation is to be instituted challenging the constitutionality of the aforesaid Act No. 8 of 1958 of the State of Louisiana. In view of this fact, and to assure appropriate refund, in the event said Act No. 8 of 1958 should be declared unconstitutional by final judicial decision, of payments made pursuant to rate schedule changes proposed as a result of such litigation, the Commission proposes to suspend for one day beyond the date they would otherwise become effective any such rate schedule changes."

6. 47 La.Rev.Stat.1950 § 1576.

7. The Commission also denied a petition for intervention by Transcontinental Gas Pipe Line Corporation.

a petition to intervene and an application for rehearing; on June 28, 1961, United Fuel Gas (United), Texas Gas Transmission Corporation (Texas) and Transcontinental Gas Pipe Line Corporation (Transco) filed petitions for rehearing; Transco also filed petitions for review in this Court on July 28 and August 9, 1961.

On August 30, 1961, the Commission ordered the proceedings reopened and thereafter issued an order on March 5, 1962, requiring petitioners to refund the amounts collected under the August 1958 agreements whether or not refunds were made by the State of Louisiana.[8] This is the action under attack in this appeal.

Each of the six petitioners presents both substantive and procedural arguments. Their primary contentions may be summarized as follows: (1) that on August 30, 1961 and March 5, 1962, respondent lacked jurisdiction to reconsider or modify its May 29, 1961 order; (2) that they were denied their right to a "hearing" as required by § 4(e) of the Natural Gas Act, 15 U.S.C. § 717c(e); and (3) that the order of March 5 is arbitrary and capricious. We will consider these contentions seriatim.

(1) Petitioners first assert that a Commission order entered pursuant to rehearing is not open to a petition for rehearing, even by a party not theretofore aggrieved by any action of the Commission, and that such an order becomes binding on all parties unless a petition for judicial review is filed within sixty days as provided by § 19(b) of the Act, 15 U.S.C. § 717r(b). Thus they contend that the Commission was powerless to consider the purchaser-intervenors' petitions for rehearing of the May 29 order and to thereafter modify it since that order was entered pursuant to petitions for rehearing of the February 21 order and no petition for judicial review was filed within sixty days after the May 29 order.

The plain purpose of the statutory provision for rehearing, however, is

8. For reference, the significant events are as follows:

| July 11, 1958 | —Commission order authorizing producers to file rate schedule changes reflecting the additional one cent per Mcf Louisiana gas gathering tax. Provision was made for refunds should the tax be declared invalid. |
| August 1, 1958 | —Supplemental gas gathering tax becomes effective. |
| October 30, 1958 | —First payment of tax due. |
| December 1, 1958 | —Tax suspended; later declared invalid. |
| February 21, 1961 | —Commission order requiring the producers to refund to "their respective purchasers the amounts collected under the respective agreements * * * together with a proportionate part of any interest received from the State of Louisiana. |
| April 14, 1961 | —Commission order granting rehearing of the order of February 21. |
| May 29, 1961 | —Commission order on rehearing modifying the order of February 21 so as to require the producers to make refunds only where they in turn receive refunds from the State of Louisiana. |
| June 27, 1961 | —Memphis files petition to intervene and application for rehearing. |
| June 28, 1961 | —United, Texas and Transco file petitions for rehearing. |
| July 28, 1961 | —Transco files petition for judicial review. |
| August 9, 1961 | —Transco files second petition for judicial review. |
| August 30, 1961 | —Commission order reopening the proceedings. |
| March 5, 1962 | —Commission order reversing the order of May 29, insofar as it applied to petitioners, and requiring refunds to be made whether or not refunds were made by the State of Louisiana. |

to provide opportunity for parties to challenge Commission action when they are thereby aggrieved for the first time, and for the Commission to consider such challenge before its action is subjected to judicial review. Petitioners here were aggrieved for the first time by the order of February 21 which required them to make refunds. The purchaser-intervenors were aggrieved for the first time by the order of May 29 which relieved the petitioners from this requirement. Hence we conclude that the May 29 order was open to the petitions for rehearing which the purchaser-intervenors filed within thirty days as provided by the Commission's rules.

The Commission, however, did not act on the purchaser-intervenors' petitions for rehearing within thirty days after they were filed on June 27 and 28. The Commission's rules provide that if the Commission does not act on such petitions within thirty days they may be deemed denied.[9] Accordingly, they were deemed denied on July 28 and the sixty-day period for filing a petition for judicial review commenced on that date. Before its expiration the Commission acted by reopening the proceedings on August 30.

■ Petitioners say that the Commission would have been authorized to act on August 30 if a timely petition for judicial review had been filed, but that it was not authorized in the absence of such petition. We cannot agree.

Under § 19(a) of the Natural Gas Act,

"* * * Until the record in a proceeding shall have been filed in a court of appeals, as provided in subsection (b) of this section, the Commission may at any time, upon reasonable notice and in such manner as it shall deem proper, modify or set aside, in whole or in part, any finding or order made or issued by it under the provisions of this chapter."

This basic authority is strengthened by § 16 of the Act which provides, in part:

"The Commission shall have power to perform any and all acts, and to prescribe, issue, make, amend, and rescind such orders, rules, and regulations as it may find necessary or appropriate to carry out the provisions of this chapter." [15 U.S.C. § 717o]

■■ Petitioners would require that the purchasers seek judicial review of an order which the Commission has already agreed to reconsider. Such action would be inconsistent with the policy of allowing an agency to take corrective action before judicial review. Cf. Public Service Comm. of State of New York v. Federal Power Comm., 109 U.S.App.D.C. 66, 284 F.2d 200 (1960). This court has consistently held that an administrative agency retains jurisdiction to reconsider and correct its order until the time for judicial review has expired. Enterprise Company v. Federal Communications Comm., 97 U.S.App.D.C. 374, 231 F.2d 708 (1955), cert. denied sub nom., Beaumont Broadcasting Corp. v. Enterprise Company, 351 U.S. 920, 76 S.Ct. 711, 100 L.Ed. 1451 (1956). The power to correct an order remains with the Commission until such time as the record on appeal has been filed with a court of appeals or the time for filing a petition for judicial review has expired.

■■ (2) We must also reject petitioners' next contention which is essentially that the Commission was precluded from requiring refunds in the absence of a "hearing."

In reopening the proceedings, the Commission's order of August 30, 1961 expressly provided for the submission of written statements and invited the submission of evidence if "any party wishes to take the position that [it] * * * is necessary." The parties filed statements of position, but did not seek to present any factual evidence. Since the issues presented were legal, no adversary,

---

**9.** Section 1.34, Commission's Rules of Practice and Procedure, 18 C.F.R. § 1.34.

evidentiary hearing was required. Mississippi River Fuel Corp. v. Federal Power Comm., 108 U.S.App.D.C. 284, 281 F.2d 919 (1960), cert. denied, 365 U.S. 827, 81 S.Ct. 712, 5 L.Ed.2d 705 (1961); Sun Oil Company v. Federal Power Comm., 256 F.2d 233 (5th Cir.), cert. denied, 358 U.S. 872, 79 S.Ct. 111, 3 L. Ed.2d 103 (1958). The requirements of procedural due process were satisfied by the opportunity to submit written evidence and written argument. Federal Communications Comm. v. WJR, 337 U. S. 265, 69 S.Ct. 1097, 93 L.Ed. 1353 (1949).

██ (3) Finally we are unconvinced by petitioners' arguments that the Commission acted arbitrarily.

The stated purpose of Order No. 206, issued July 11, 1958, was "to assure appropriate refund, in the event said Act No. 8 of 1958 should be declared unconstitutional by final judicial decision." Each of the individual suspension orders, issued in late July and August required the producers to "refund * * * the difference between the presently effective rates and charges and the proposed increased rates and charges * * * in the event the additional tax * * * is for any reason held to be invalid." This clearly established petitioners' obligation to make refunds in the event the tax was declared invalid.

Petitioners urge, however, that correspondence between the Commission's Chairman and the collector of revenue of the State of Louisiana during September and October 1958 should be considered as a contemporaneous interpretation of what the Commission intended by its orders. Petitioners contend that this correspondence, which was made public in a Commission press release on October 30, 1958, indicated the Commission's intention to require the producers to make refunds only if the producers received refunds from the State. Petitioners also urge as contemporaneous interpretations of Order No. 206 the terms of certain certificate orders issued by respondent during the months of September, October and November 1958. These orders granted certificates of public convenience and necessity in proceedings involving the Louisiana gas gathering tax as part of the initial approved rate, and appear to have conditioned the applicants' refund obligation on the payment to them of refunds by the State.

We think, however, that, since Order No. 206 is unequivocal in requiring producers to make refunds to their purchasers in the event the tax was declared invalid, there is no valid basis for considering extraneous matters to determine its meaning. Cf. Caminetti v. United States, 242 U.S. 470, 37 S.Ct. 192, 61 L. Ed. 442 (1917). In any event, we do not agree that consideration of the letters would alter the meaning of Order No. 206,[10] nor is it reasonable to read into Order No. 206 the specific language of orders issued in unrelated certificate proceedings.

The Commission, in providing for refunds, was exercising its function of allowing only costs of service necessarily incurred by the producers. See Acker v. United States, 298 U.S. 426, 56 S.Ct. 824, 80 L.Ed. 1257 (1936). By failing to pay the tax under protest, the producers created a situation in which, if the tax proved to be illegal, injury would fall upon either themselves or the consumer. The consumers were unable to avoid that predicament. Petitioners indicate that payment of the tax under protest would have endangered the State of Louisiana's ability to pay its school teachers and

10. The intent of these letters is indicated by the following passage:

"Neither this general order [Order No. 206] nor the orders subsequently adopted in accordance with its terms suggested in any way that a suit should be brought to test the validity of the Louisiana gathering tax, but merely sought to protect ultimate consumers in a proper manner against payment of operating expenses which included the tax if the tax is held to be invalid." Letter from Commission Chairman to Louisiana Collector of Revenue, October 28, 1958.

otherwise finance its educational system. But this consideration, however admirable, does not allow petitioners to shift the cost of the invalid tax to their purchasers.

In cases numbered 16978 (Pan American), 17006 (Sun), 17118 (Texaco), 17005 (Union), 17268 (Union Texas), and 17298 (Phillips), the Commission's order is affirmed.

Respondent's motions to dismiss in cases numbered 16787 and 16929 (Pan American) and 16794 and 16963 (Sun) are granted.

So ordered.