## UNITED STATES v. HUDGINS–DIZE CO., Inc. et al.

### Civ. No. 850.

United States District Court
E. D. Virginia, Norfolk Division.

Feb. 18, 1949.

John P. Harper, Asst. U. S. Atty., of Norfolk, Va., and George R. Humrickhouse, U. S. Atty., of Richmond, Va., for plaintiff.

W. R. C. Cocke, W. R. Ashburn and Lester S. Parsons, all of Norfolk, Va., for defendants.

BRYAN, District Judge.

The United States sues to recover as liquidated damages the amount of the underpayment of overtime wages, for alleged violations of the Public Contracts Act, Walsh-Healey Act, June 30, 1936, c. 881, sec. 1, 49 Stat. 2036, May 13, 1942, c. 306, 56 Stat. 277, 41 U.S.C.A. §§ 35–45 grounding the action on the findings, conclusions and decision of the Secretary of Labor. Defendant to the action are the corporation, which was the party contracting with the United States in each of four contracts, the contractor's sureties, and certain individuals whose liability was predicated on the averment that they managed the production and employment by the contractor under the contracts.

Motions for summary judgment have been filed by the plaintiff and by all of the defendants except the contracting corporation and its president, Marcellus Hudgins, neither of whom has appeared in this action. With the Government's motion is exhibited the record of the proceedings before the trial examiner, the Administrator of the Wages and Hours Division and the Secretary of Labor.

The United States entered into five contracts with Hudgins-Dize Company, Inc. for the manufacture and delivery by the latter of a large quantity of haversacks and pyramidal tents. While the complaint by the Secretary of Labor initiating the administrative inquiry embraced all of the contracts, it was voluntarily dismissed as to the contract dated August 9, 1941, No. W-431-QM-5377 and the only contract for haversacks. The remaining contracts, all for pyramidal tents, were dated and numbered, and their performance periods were, as follows:

| Date | Contract number | Date of Performance |
|------|-----------------|---------------------|
| October 3, 1940 | W–431–qm–3620 | 11/27/40 – 6/3/41 |
| December 14, 1940 | W–431–qm–4250 | 5/12/41 – 7/19/41 |
| January 6, 1942 | W–431–qm–6153 | 2/25/42 – 8/10/43 |
| January 10, 1942 | W–431–qm–6322 | 2/25/42 – 8/10/43 |

On August 17, 1944, the Secretary of Labor issued his complaint charging that Hudgins-Dize Company, Inc., Marcellus Hudgins, its president, and Lowery W. Finley and Frank M. Miles had violated the Walsh-Healey Act, in that, they had, inter alia, failed and refused to pay their employees engaged in the performance of the five contracts the overtime compensation required by the terms of the contracts and of the Act. 41 U.S.C.A. §§ 39, 45. As will later appear, Finley and Miles were not originally connected with the contractor, but after performance of the last two contracts had begun, they financed Hudgins-Dize in its completion of them and are charged with being the actual managers of production and employment.

Confessedly, each of the contracts was for the manufacture and furnishing of materials in an amount exceeding $10,000. Pursuant to sec. 1(c) of the Act the contracts contained the required representation and stipulation that no person should be "permitted to work in excess of eight hours in any one day or in excess of forty hours in any one week, unless such person is paid such applicable overtime rate" as set by the Secretary of Labor. 41 U.S.C.A. § 35. The contract also contained an "overtime clause" to the effect that the employees of the contractor might be employed in excess of 8 hours in any 1 day or in excess of 40 hours in any 1 week, if they were paid overtime at the rate set by the Secretary, and that "until otherwise set by the Secretary of Labor the rate of pay for such overtime shall be one and one-half times the basic hourly rate".

All of the contracts were supported by a performance bond with the uniform condition that "the principal shall well and truly perform and fulfill all of the undertakings, covenants, terms, conditions and agreements of said contract".

Only contract No. 3620 was accompanied by a payment bond, the condition of which was that "the principal shall promptly make payment to all persons supplying labor and material in the prosecution of the work provided for in said contract". The defendant National Surety Corporation was the surety on both bonds annexed to contract No. 3620, and the United States Fidelity & Guaranty Company was the surety for the other contract bonds.

Besides Hudgins-Dize Company, Inc., Hudgins, Finley and Miles were made parties defendant to the administrative complaint. Notice of the proceedings in the

Department of Labor was given to the sureties. After lengthy hearings before a trial examiner, in which evidence was taken and briefs presented, the Examiner filed his report on February 15, 1946, making findings of fact and stating his conclusions of law, the result of which was to adjudge all of the defendants in violation of the representations and stipulations of the contracts and statute, and to assess therefor liquidated damages, equal to the underpayments of the overtime, in the sum of $3,664.68 against Hudgins-Dize Company, Inc. and Hudgins, of which $1,414.96 was also awarded against Miles and Finley, the latter amount representing damages for breaches of the last two contracts during the period from June 10, 1942 to August 10, 1943. On exceptions the Examiner's report was confirmed by the Administrator in his decision of August 29, 1946. Finley and Miles sought a review of the Administrator's decision by the Secretary of Labor, and the Secretary on September 2, 1947, affirmed the orders of the Administrator.

The present action was commenced June 28, 1948.

■ With the exception later noted in respect to Finley and Miles, the findings made in the administrative proceedings are supported by a preponderance of the evidence, and they are accepted. They are presumptively correct, and the burden was upon the defendants to show that they were not supported by the evidence. No such showing has been made save as to Miles and Finley. United States v. Chemical Foundation, 272 U.S. 1, 14, 47 S.Ct. 1, 71 L.Ed. 131; Proctor & Gamble v. Coe, 68 App.D.C. 246, 96 F.2d 518, 520; State Corp. Comm. v. Wall, 10 Cir., 113 F.2d 877, 880; Tagg Bros. & Moorhead v. United States, 280 U.S. 420, 443, 50 S.Ct. 220, 74 L.Ed. 524; Acker v. United States, 298 U.S. 426, 434, 56 S.Ct. 824, 80 L.Ed. 1257; Cox v. United States, 332 U.S. 442, 68 S.Ct. 115.

■ The Court is of the opinion, too, that the conditions of the performance and payment bonds embrace the violations, if any, committed by the contractor against the representations and stipulations of the statute and contracts relating to hours of work and overtime. It is unnecessary and academic to determine whether the obligation of the contractor is statutory or contractual. The contracts are fitted with the provisions of the statute and are thus geared to the administrative enforcement machinery of the Act. Together they form a pattern of right and remedy to attain a legislative objective. Neither loses its viability; each retains its individual efficacy. They simply complement each other. Throughout each contract it is emphasized that the contractor must meet the enumerated stipulations, whether they be styled terms of the statute or of the contract. A failure to do so would be a failure to well and truly perform and fulfill the undertakings of the contract—a breach of the bond.

Nor can it be successfully maintained that the bonds were to indemnify only against losses cognizable under the Miller Act, 40 U.S.C.A. § 270a, or the Davis-Bacon Act, 40 U.S.C.A. § 276a. No matter their association with other legislation, the bonds were here given for the faithful performance of the covenants of the instant contracts; one of those covenants was obedience to stipulations prescribed in the Walsh-Healey Act; and the bonds must therefore necessarily answer for violations of such stipulations. Again this is true whether the stipulations for payment of minimum wages and overtime be considered statutory or contractual.

It is urged that the Secretary of Labor was not authorized under the statute to make a finding with respect to overtime, because provision for overtime is not one of the stipulations or representations named in section 1 of the Walsh-Healey Act. 41 U.S.C.A. § 35. By the same reasoning it is said that the overtime stipulation is not an undertaking within the condition of the bond, and ergo that the finding of the Secretary as to overtime is not enforceable against the bond. Section 1 of the Act does not mention overtime, subsection (c) only prohibiting work in excess of 8 hours per day or 40 hours per week. However, section 6, 41 U.S.C.A. § 40, permits the Secretary to make variations and exemptions from the prohibitions contained in the other sections of the Act, and expressly provides that "Whenever the Secretary of Labor

shall permit an increase in the maximum hours of labor stipulated in the contract, he shall set a rate of pay for any overtime, which rate shall be not less than one and one-half times the basic hourly rate * * *.". That the Secretary has done so is obvious from the presence in the contracts of the "overtime clause" already described.

■ The Court is of the opinion that the Portal-to-Portal Act has no application to this case. It must be conceded that the activities for which overtime is here sought were within the contracts of employment, because the periods of labor involved are those for which the contractor has paid its employees, the claim being that they have not been paid fully. 29 U.S.C.A. § 251 et seq.

■ Moreover, the two-year limitation prescribed by the Portal-to-Portal Act does not bar this action. The decision of the Secretary of Labor was made September 2, 1947, and the action was brought June 28, 1948, within one year of the Secretary's judgment. If a distinction is asserted between the defendants in this aspect, on the ground that Hudgins-Dize Company, Inc. and Hudgins took no appeal from the Administrator's decision, and as to them the time runs from his decision, the action must still be found to be seasonably instituted, because the Administrator handed down his report on August 29, 1946—less than two years before the action, with no shorter State limitation. But the time limitation, even if applicable to the United States, runs only from the termination of the administrative proceedings, not from the time of the nonpayment of overtime, because until that determination the United States had no cause of action.

■ The Court concludes that the administrative determination was as binding upon the defendant sureties as it was against their principal. They had ample notice, actual and formal, of the hearings in the Department of Labor, and the decision of the Secretary must be given the same weight against them as the Act gives it against the contractor. No reason appears why the rule holding a surety bound by a judgment rendered against his principal in an action to which the surety was not a party, but of which he was fully aware, should not be applicable to the instant administrative decision. Vide: American Surety Co. v. Babb, 4 Cir., 74 F.2d 542, 544; State-Planters Bank & Trust Co. v. First National Bank, 4 Cir., 76 F.2d 527. But a reason is clearly present for holding the sureties to the administrative determination. The terms of the contracts, as well as of the Act, are a part of the bonds. Thereby the sureties agree to treat breaches of the stipulations as violations defined in the statute, to abide the procedural methods set up by the Act, and, as well, to accord the Secretary's conclusions the effect given them by the Act.

The United States seeks to fix liability upon the individual defendants, Lowery D. Finley and Frank M. Miles, because, it says, they had control and supervision of the production under the last two contracts, and that they thereby became personally responsible for such violations of the Walsh-Healey Act as occurred during the period of their control and supervision. The Examiner, the Administrator and the decision of the Secretary of Labor sustain this contention.

■ The Court disagrees with this conclusion. It holds, first, that the Act does not authorize a recovery against one not a party to the contract, and, secondly, that if the Act does empower the Secretary to make an award against a person not a party to the contract, the preponderance of the evidence does not sustain the finding that Finley and Miles exercised such control and supervision of the production, or management of employment, as to constitute them violators of the Act.

The Government spells out its power to reach the individuals from sec. 2 of the Act, 41 U.S.C.A. § 36, providing: "Any breach or violation of any of the representations and stipulations in any contract for the purposes set forth in section 35 of this title shall render the party responsible therefor liable * * *."

■ The phrase "party responsible", the United States, contends, fastens liability upon any person, firm or corporation, whether or not named in the agreement as

a promisor or covenantor, if he knowingly failed to command obedience to the stipulations and representations of the statute and contract. In this the Court finds error. The word "party" definitely denotes a status or connection; it relates the person to some other person or thing. Aside from its improper usage as defining an unrelated person (Funk & Wagnalls Standard Dictionary 1935 Ed.) the context of the Act excludes the intent ascribed to the word by the Government. The statute plays on contracts exclusively. In that setting "party" is a word of art. It can refer only to a promisor or covenantor in the instrument. The Act purposes the payment of adequate wages, but its force is directed only upon public contracts, to bind obligors therein to its cause. This end might perhaps be furthered through other legislation directed towards others than contractors, but the Walsh-Healey Act only operates upon those in contract with the United States. The aim to hold others cannot be accomplished under this Act.

 This is not to say that the corporate form may be used to evade or defeat public policy or the lawful ends of the legislation. Any individual who has attempted to use the corporate entity to escape the prescriptions and proscriptions of the Walsh-Healey Act may be held personally responsible for violating them. The interposition of corporate form has never been permitted to thwart the action of law upon a wrongdoer. The courts will tear away the corporate veil whenever it is used "to evade a statute or modify its intent". Nettles v. Rhett, 4 Cir., 94 F.2d 42, 48. But the evidence in this case, as will appear, does not prove evasion, subterfuge, or circumvention by Finley or Miles. Indeed, it is not on that premise that the Government seeks to hold them liable.

 However, if we concede to the Act applicability to persons not parties to the contract, the evidence here does not warrant a finding against Finley or Miles on the theory that they were in control of production or employment under the two contracts performed during their connection with Hudgins-Dize.

The individual defendants are charged with controlling or managing production under contracts No. 6153 and 6322, which were entered into January 6, 1942 and January 10, 1942, respectively, by Hudgins-Dize. On those dates neither Finley nor Miles had the remotest connection with the contractor. The period of control and management attributed to Finley and Miles commences in June 1942 and extends through August, 1943. The first appearance of Finley and Miles in the picture is on February 12, 1942 when they entered into a written agreement with Hudgins-Dize Company, Inc. to finance that company in completing its last two contracts with the United States. The contractor being unable to finance completion of the contracts, Finley and Miles agreed to make advances of money to the company for that purpose. In accordance with prudent practice, they insisted upon the right to give the management of the company, its operations and productions such investigation and supervision as they should deem necessary. They reserved to themselves not only the right to inspect the records and work, but also to protect the security of their loan by requiring the company to follow such orders and instructions, and take such steps and measures, as might be necessary to restore the workmanship and progress of the production under the contracts to a satisfactory state, whenever it was found that the company was not being capably managed or the work efficiently performed. Surely these stipulations and reservations, and their actual enforcement, were not a management or control of the company, its production or its employment policy, in the sense that Miles and Finley superseded Hudgins-Dize Company, Inc.

True it is, that in June 1942 one Foley was substituted for Saunders as superintendent. The latter had been in the employ of Hudgins-Dize during the performance of the previous contracts. Foley was employed to succeed him because of the unsatisfactory progress of production. To be sure, the change was prompted by Finley and Miles. But it was accomplished only after and in consultation with the Hudgins-Dize Company and with its assent. Foley became the employee of the company, not of Miles and Finley, and the technical

phase of the production was left to one Hurst.

Neither Miles nor Finley acted in any manner except as would be expected of a lender or financier looking after the security of his loan.

The finding and decision of the Secretary against Finley and Miles cannot be sustained.

The Court will grant the motion of the United States for summary judgment in this action against all of the defendants except Finley and Miles, as to whom the motion will be denied. The motions of the National Surety Corporation and of the United States Fidelity & Guaranty Company for summary judgments will be denied, but the motion of Finley and Miles for summary judgment will be granted. The effect will be to award to the United States the judgment prayed in its complaint, against all of the defendants except Finley and Miles, but to dismiss the complaint as to these individuals.