**UNITED STATES of America,
Plaintiff,**

v.

**ISLIP MACHINE WORKS, INC., a Corporation; and Elwood S. Kent, individually and as an officer of Islip Machine Works, Inc., Defendants.**

**Civ. No. 17742.**

United States District Court
E. D. New York.

Dec. 14, 1959.

Cornelius W. Wickersham, Jr., U. S. Atty., Eastern District of New York, Brooklyn, N. Y., Myron Beldock, Asst. U. S. Atty., Brooklyn, N. Y., of counsel, for plaintiff.

Harry H. Goebel, New York City, for defendants.

BARTELS, District Judge.

The United States brings this action under Section 2 of the Walsh-Healey Public Contracts Act, 41 U.S.C.A. § 36, to recover $4,015.14 as liquidated damages for breach of contract arising out of underpayment of wages on Contract DAI–19–058–504–ORD–(P)–188, dated April 7, 1955. The action is based upon the findings and conclusions of a Hearing Examiner of the Department of Labor pursuant to § 5 of the Act, 41 U.S. C.A. § 39. The defendants in the action are the corporation, which was the contracting party with the United States on

the contract, and one Elwood S. Kent, the president of the corporation, who was not a signatory on the contract and whose liability is predicated upon the finding that he, in effect, was a "party responsible", as that term is used in the Act, for breach of the contract.

The record shows that the administrative complaint of the Department of Labor was served on both defendants by registered mail on June 17, 1957; that a notice of hearing of the administrative proceeding was mailed to the defendants on June 25, 1957; that on July 13, 1957, a summons and complaint in the instant action was personally served on both defendants, the complaint stating, among other things, that a public administrative proceeding would be held and that the findings of the Examiner, if not appealed and if supported by a preponderance of the evidence, would be binding in the courts of the United States; that on July 17, 1957, a supplemental notice of the hearing was served on the defendants by registered mail and thereafter the hearing was held on July 30, 1957; that no appearance was made by either defendant; that on November 20, 1957, the Hearing Examiner, after hearing ten witnesses and receiving certain exhibits, handed down his decision in favor of the Government finding (1) that the defendants failed to pay the overtime rate of one and one-half times their basic hourly rates for all hours worked in excess of 8 per day of 40 per week, in breach of the contract and in violation of the stipulations of the Act and Regulations, (2) that the defendants failed to maintain, keep on file and make available adequate wage and hour records with respect to employees as required by the Act, and (3) that the defendant Kent "personally exercised active and exclusive control and supervision over plant operations, including the work of the employees and the circumstances of their employment" and that "he was the individual solely responsible for the failure to pay employees in accordance with the requirements of the Act and the contract".

When the action was set down for trial, plaintiff submitted its case on the administrative record and the exhibits therein and a trial brief describing the proceedings and basing its case upon the findings of the administrative agency. In an effort to dispute the findings of the administrative agency as to defendant Kent's liability, the defendants introduced into evidence without objection (a) an Agreement dated November 30, 1954, indicating that defendant Kent owned only 25½ shares out of 100 shares of stock of Islip Machine Works, Inc. and (b) three Notes, all dated January 3, 1955, in the amount of $50 each, signed by the corporation by Kent as Treasurer and August Wolff as Vice-President. Defendants also submitted a Trial Memorandum "primarily on behalf of the individual defendant Kent", stating that the "facts are sufficiently set forth in the memorandum submitted on behalf of the Government, as not to require repetition, subject only to the status of the defendant Kent as being 'the party responsible' under 41 U.S.C. Sec. 36" and that *"legally,* the problem involved in this case is whether the defendant Kent can be held as the 'party responsible' within the purview and intent of the section referred to." All other questions that might conceivably have been raised in this action were obviously waived. The evidence introduced by the defendants cannot be considered in this action. Aside from the fact that it is irrelevant, it is elementary that the only evidence that this Court can consider is the evidence submitted to the Hearing Examiner and the "preponderance of the evidence", described in the Act, refers to that evidence and no other.

The case was thus presented to this Court as though based upon a stipulation of facts except with respect to the conclusion of the Hearing Examiner that Kent was a "party responsible". As to that question, defendants claim the finding is not supported by the preponderance of the evidence. Such a stipulation is unnecessary, however, because the Court finds that all the findings of

the administrative agency are supported by the preponderance of the evidence and are conclusive upon this Court if the requirements of due process have been fulfilled.

The Government argues that there is no lack of due process in holding defendant Kent liable in this proceeding because service in the administrative proceeding was by registered mail. It contends further that the issue of service has in all events been waived. This jurisdictional question should be set at rest at the outset. In addition to the prior service by mail of the administrative complaint and notice, there was in this case personal service of the complaint on both defendants which notified them of the administrative proceeding to be held thereafter. This was followed by service by registered mail of a supplemental notice of the date of the administrative hearing. It has been held that service of notice by registered mail is reasonably calculated to give defendants knowledge of the proceedings and an opportunity to be heard and, consequently, satisfies the requirements of due process. N.L.R.B. v. O'Keefe & Merritt Mfg. Co., 9 Cir., 1949, 178 F.2d 445; see N.L.R.B. v. Wiltse, 6 Cir., 1951, 188 F.2d 917, certiorari denied Ann Arbor Press v. N. L. R. B., 1951, 342 U.S. 859, 72 S.Ct. 87, 96 L.Ed. 647. There still remains a question as to whether the due process which will support the findings of an administrative agency would be sufficient process to support the legal enforcement of those findings in this Court after personal service of summons and complaint. This issue apparently, although not expressly, has been decided in the affirmative in the O'Keefe & Merritt case, supra.[1] In this action, moreover, the defendant Kent makes no point of the jurisdictional question and must be deemed to have consented to the binding effect of the findings in the administrative hearing if supported by the preponderance of the evidence.

In urging liability upon the individual defendant Kent, the Government asserts that he is the "party responsible" within the broader application of that term as used in § 2 of the Act, and within the general purport of the Act. In effect, this is an action for breach of contract. The liability of the defendants, which is referred to in § 2 of the Act, is "liability for breach" of the contract. In order to become liable for breach of a contract, a person must be a party to the contract. The Court has examined the arguments that the phrase "party responsible", as used in this statute, goes beyond the contractor and fastens liability upon others who are not parties in the same manner as if they were parties. It is not possible for this Court to agree with this conclusion. An examination of the Act indicates that the stipulations and representations of the Act became a part of the contract and as such became binding only upon the parties. Indeed, it is difficult to comprehend how they could have become binding upon those who are not parties to the contract. Consequently, as to the meaning to be ascribed to the phrase "party responsible", as used in the Act, the Court agrees with the conclusion reached in United States v. Hudgins-Dize Co., Inc., D.C.E.D.Va. 1949, 83 F.Supp. 593. This does not mean, however, that the defendant Kent cannot be a "party responsible" upon other legal theories outside of or in addition to the general principles of contract law.

While the defendant Kent did not individually sign the contract, the uncontradicted evidence indicates that he as president in all respects had ex-

1. But see, Restatement of Conflicts of Laws, § 75, comment *d*:

"A method of notification which may be sufficient if no other method obviously better calculated to give knowledge is practicable, is unreasonable and therefore insufficient if another and obviously better method of notification is practicable."

See, also, Restatement of Judgments, § 6, comment *b*.

clusive control of the corporation by stock ownership and otherwise and that he hired and fired and was the "boss". In reality, the corporation was his *alter ego* or agent. It might be said that he was in the position of an undisclosed principal. Moreover, since in the last days of the operation under the contract he paid wages with his individual checks, he could also be deemed to be a successor to the corporation. It is unnecessary, however, to resort to these theories since the defendant Kent may be held liable as the "party responsible" (1) by disregarding the corporate fiction and considering him the actual party to the contract, or (2) holding him liable in tort for inducing the corporation to breach the contract.

 In this case it is easy to disregard the corporate fiction. For this purpose it is no longer necessary for the Court to find that the corporate entity was resorted to for fraudulent or criminal purposes. It is now well settled that the Court will not permit a fictitious personality to be used to evade or defeat a public duty or statutory obligation. This principle was set forth in United States v. Hudgins-Dize Co., Inc., supra, when the Court stated (83 F. Supp. at page 598):

"This is not to say that the corporate form may be used to evade or defeat public policy or the lawful ends of the legislation. Any individual who has attempted to use the corporate entity to escape the prescriptions and proscriptions of the Walsh-Healey Act may be held personally responsible for violating them. The interposition of corporate form has never been permitted to thwart the action of law upon a wrongdoer. The courts will tear away the corporate veil whenever it is used 'to evade a statute or modify its intent'."

Again, in Hamilton Ridge Lumber Sales Corporation v. Wilson, 4 Cir., 1928, 25 F.2d 592, 595, the Court held:

"Nor, can I agree with the contention of counsel for the bank that this doctrine is applicable only in cases where the corporate entity has been resorted to for purely fraudulent and criminal purposes. I do not find that the rule is subject to any such limitations, but, on the contrary, that it is applicable wherever reason and justice require its application, though the acts of the parties amount to constructive fraud only."

Judge Learned Hand in United States v. Morris & Essex R. Co., 2 Cir., 1943, 135 F.2d 711, 713, stated the principle in these words:

" * * * Courts will not allow the fictitious personality of a corporation to be used as a means for avoiding public duties".

A similar holding appears in Armour Transp. Co. v. Pennsylvania Public Utility Commission, 1943, 154 Pa.Super. 21, 34 A.2d 821, 822, where the Court remarked:

" * * * This appellant in reality is a one man corporation; the man is Louis Fox, its president and treasurer. We may look through the veil of corporate structure to the realities as demonstrated by Fox's conduct."

See, also, J. J. McCaskill Company v. United States, 1910, 216 U.S. 504, 515, 30 S.Ct. 386, 54 L.Ed. 590, and Fletcher Cyclopedia Corporations, Vol. 1, § 41, page 134, and § 45, page 172. Some evidence was introduced before the Hearing Examiner that two other persons had an amorphous stock interest in the corporation. Defendant Kent argues that the corporation is a distinct entity and that there is no basis for piercing the corporate veil. Even if the Court were to agree with this conclusion it would be of no avail to the defendant Kent because he could still be held as a "party responsible" for inducing the corporation to breach its contract.

 Generally speaking, a third party who induces a breach of contract is liable to the injured party. Lumley v. Gye, 1853, 2 El. & Bl. 216, 118 Eng.

Rep. 749.[2] To this principle there is, however, an exception with respect to officers who acting in the interest of the corporation induce the corporation to breach a contract. Vassardakis v. Parish, D.C.N.Y.1941, 36 F.Supp. 1002; Hornstein v. Podwitz, 1930, 254 N.Y. 443, 448, 173 N.E. 674, 84 A.L.R. 1. On the other hand, it appears that if an officer or director acts against the interest of the corporation in inducing the breach, he can be held liable to the injured party. Vassardakis v. Parish, supra. In this case the breach of contract by the corporation resulted not only in termination of the contract with the Government but also in the blacklisting of the corporation. It can hardly be said under these circumstances that officer Kent was acting in the best interest of the corporation in inducing the breach. Kent, therefore, would be liable to the Government for the amount of the underpayment of wages representing the damages caused by inducing the corporation to violate the terms of its contract. Judgment could be entered against both the corporation and the defendant Kent, although one is based upon breach of contract and the other upon inducement to breach the contract. Hornstein v. Podwitz, supra; Simon v. Norma Electric Corp., 1944, 293 N.Y. 171, 56 N.E.2d 537.

The corporation is clearly liable. Several theories are available to hold defendant Kent liable under the findings of the Hearing Examiner without resorting to an interpretation of the phrase "party responsible", as used in the Act, which would include persons other than the contracting parties. The Court rests its judgment upon the theory that the corporation and Kent were one and the same, and as contracting parties should be held jointly and severally responsible.

The foregoing opinion contains the Court's findings of fact and conclusions of law pursuant to Fed.Rules Civ.Proc. Rule 52, 28 U.S.C.A.

Enter judgment accordingly

2. See Restatement of Torts, § 766.