**UNITED STATES of America**

v.

**SANCOLMAR INDUSTRIES, INC., et al.**

**No. 69–C–623.**

United States District Court,
E. D. New York.

July 31, 1972.

Isaac Kaplan, Kaplan & Kaplan, New York City, for defendants.

Robert A. Morse, U. S. Atty., Brooklyn, N. Y., (Cyril Hyman, Asst. U. S. Atty., of counsel), for plaintiff.

Memorandum of Decision and Order

MISHLER, Chief Judge.

This is an action brought by the Government pursuant to Section 2 of the Walsh-Healey Public Contracts Act (41 U.S.C. § 36).[1] Jurisdiction is founded on 28 U.S.C. § 1345.[2]

---

1. The section provides in part:

"... Any sums of money due to the United States of America by reason of any violation of any of the representations and stipulations of said contract set forth in section 35 of this title ... may be recovered in suits brought in the name of the United States of America by the Attorney General thereof."

2. 28 U.S.C. § 1345 provides:

"Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or any agency or officer thereof expressly authorized to sue by Act of Congress."

Defendant corporation was awarded eleven (11) contracts by Government agencies for the manufacture of marking guns and other material, supplies and equipment for the armed services, each contract exceeding $10,000 in amount. Defendant Anita Castorina signed the contracts as president on behalf of the defendant corporation.

On May 20, 1969, the Under Secretary of Labor issued a complaint against the defendants charging that employees of defendant corporation employed in the performance of the contracts worked in excess of 8 hours per day and 40 hours per week without recovering time and a half pay as required by the contract, by Sections 1 and 6 of the Act (41 U.S.C. §§ 35 and 40) and by the regulations promulgated by the Secretary of Labor (41 C.F.R. part 50–201 section 201.103). It charged the individual defendants Anita Castorina and Luigino Castorina with exercising control over wages paid and hours worked in their respective capacities as president and manager.

On June 12, 1969 the instant action was commenced by the filing of a complaint. Thereafter and on October 9, 1969 the administrative complaint was amended to include an additional contract and an additional violation for failing to maintain and make available adequate and accurate payroll records of employees engaged in the performance of the aforementioned contracts. Defendants denied the material allegations of the administrative complaint. Defendant Luigino Castorina also denied that he served in any managerial capacity.

Pre-hearing conferences were held before the hearing examiner on June 3, 1969, August 12, 1969, October 1, 1969 and November 20, 1969. The hearing was conducted on March 9, 1970, June 10, 1970 and June 11, 1970. Defendants were represented by counsel at all the pre-hearing conferences and the hearing except the initial pre-hearing conference. The hearing examiner's findings of fact and conclusions of law were made on December 16, 1970 and filed in the office of the Secretary of Labor on December 22, 1970. He determined that defendants were liable to the Government in the amount of $4,094.15 and ordered defendants to pay said sum to the Government " . . . as liquidated damages for unpaid overtime compensation . . . ." and that defendants should be placed on the ineligible list of contractors as provided under Section 3 of the Act (41 U.S.C. § 37). Defendants petitioned the Administrator of the Wage and Hour Public Contracts Division of the Department of Labor for review, which petition was dismissed on February 8, 1971.

The Government moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendants' brief claims that the hearing examiner's decision is not supported by a preponderance of the evidence.

The hearing examiner made an exhaustive analysis of the testimony in support of his findings. He found that during the term of the performance of the Government contracts in question, the defendant corporation paid overtime at the required rate for ten (10) hours but beyond that paid only straight time. It did this by designating employees as vendors (or independent contractors) for the period of time in excess of 50 hours per week.[3] Employees were paid straight time for overtime in excess of 50 hours. The hearing examiner found the follow-

---

3. Mr. Castorina testified that vendors might or might not be covered by Walsh-Healey requirements. He stated that he established such a classification for internal auditing so that charges against contracts that were not to be included as a basis for progress payments would be excluded.

ing employees were entitled to overtime for such work in the following amounts:

| | |
|---|---|
| Harold Alonso | $ 71.40 |
| Steven Aspel | 9.70 |
| Kenneth Byrd | 369.09 |
| Frederick Cohen | 90.62 |
| Kenrick A. Cook | 417.94 |
| Robert Cosio | 370.44 |
| Donald Duester | 300.92 |
| Jose Estopinales | 290.25 |
| Vincent Fiordimondo | 153.75 |
| Francisco Gonzalez | 88.08 |
| Aksel E. Jensen | 376.63 |
| Robert Keir | 40.18 |
| Willy Krueger | 7.88 |
| Robert Lapuma | 12.91 |
| Theodore Lester | 21.85 |
| Wesley Lester | 62.84 |
| Klauss Liebig | 123.49 |
| Alfredo Lucas | 316.57 |
| Aldo Mazzone | 349.15 |
| Larry E. Morrison | 95.97 |
| Thomas Pettit | 360.11 |
| Henry Putallaz | 10.94 |
| Kurt H. Richter | 106.80 |
| Anthony Verrengia | 21.63 |
| Warren Walz | 25.01 |
| Total | $4,094.15 |

The hearing examiner further found that Anita Castorina and Luigino Castorina were president and general manager respectively of the defendant corporation and exercised control over wages paid, hours worked and other conditions of employment maintained by the defendant corporation.

The scope of judicial review in this action is set out in Section 5 of the Act (41 U.S.C. § 39). It provides that ". . . findings . . . if supported by the preponderance of the evidence, shall be conclusive in any court of the United States . . . ." The language of the act is ". . . too clear for doubt that where the findings comply with the requirements of the Act and are supported by a preponderance of the evidence, they shall be conclusive in a case of this kind." Harp v. United States, 173 F.2d 761, 764 (10 Cir. 1949) cert. denied 338 U.S. 816, 70 S.Ct. 56, 94 L.Ed. 494 (1949). See United States v. Southland Manufacturing Corp., 264 F. Supp. 174 (D. Puerto Rico 1967).

Guy Morone, a compliance officer of the Wage, Hour and Public Contracts Division of the Department of Labor, testified that he visited the defendants' place of business at 145 Toledo Street, Farmingdale, New York on March 3, 1969. He met with the individual defendants. He requested and received the payroll records and time cards then current for 1969 and the records for the years 1968 and 1967. Defendant Luigino Castorina advised Mr. Morone of his "vendor set up with his employees." Vendor slips were available for the payroll period showing time that employees were working on public contracts as independent contractors in excess of 50 hours per week. Mr. Morone transcribed the information for the period from the week ending January 1, 1969 to February 23, 1969 though records were available for the two year period prior to January 1, 1969. Mr. Morone spot-checked the payroll records, time cards and "vendor slips" for 1968 and 1967.

Mr. Morone testified that he advised Mr. Castorina of the violations he found in failing to pay overtime beyond 50 hours per week. Mr. Castorina admitted the violations but refused to make restitution. Defendants produced revised payroll records at the hearing. Mr. Castorina testified that the information on the time cards and time sheets is transcribed on to other payroll records and the time cards and sheets are thereupon destroyed.

Had the time cards been produced for the years 1968 and 1967 they would have shown that the above named employees worked in excess of 50 hours per week.[4] The failure to maintain the starting and stopping time of each individual during the contract period was a violation of the contract and a violation of the regulations promulgated by the Secretary of Labor (41 C.F.R. 50–201, Section 201–501).

---

4. This inference was properly drawn by the hearing examiner. Mr. Castorina denied substituting revised records. The hearing examiner found: "The substituted payroll book purported to show lesser hours worked by employees than those contained in the original payroll book seen by the compliance officer on March 3, 1969."

Arthur Lichtig, a compliance officer of the Wage and Hours Division of the Department of Labor, computed the amount due the various employees during the contract period based on vendor slips for the year 1967, information transcribed by Mr. Morone, payroll records and the cash disbursement journal.

■ The finding of the various amounts due the employees listed above is supported by a preponderance of the evidence. The argument made by defendants that the six (6) employees called by the Government were unable to compute the amounts due them with any degree of accuracy is rejected. The issue of credibility (which defendants seem to advance) is one left to the trier of the facts. United States v. Southland Manufacturing Corp., *supra*, at p. 177. Defendants demand for precision in computing damages comes with ill grace since the records were in defendants' control at the time the violation charge was brought to their attention and were thereafter destroyed. See Wigmore on Evidence (3rd ed.) §§ 278, 285, 291 [suppression of evidence]. Damage need not be proved with absolute precision. The Court said in Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 563, 51 S.Ct. 248, 250, 75 L.Ed. 544 (1931):

" . . . [W]hile the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate."

The law will not deny relief " . . . simply because there are not available the ordinary standards for proving damages. The law will resort to some practical means that will be just to the parties." Dunkel v. McDonald, 272 App. Div. 267, 70 N.Y.S.2d 653 (1947) aff'd 298 N.Y. 586, 81 N.E.2d 323. See also Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 688–689, 66 S.Ct. 1187, 1193, 90 L.Ed. 1515 (1946); Bigelow v. R.K.O. Radio Pictures, 327 U.S. 251, 263–265, 66 S.Ct. 574, 579–580, 90 L.Ed. 652 (1946); Szekely v. Eagle Lion Films, 242 F.2d 266, 269 (2d Cir. 1957).

■ The remaining issue raised by defendants is the liability of the individual defendants. The finding by the hearing examiner that both individual defendants are active in formulating corporate policy and exercising control over the day-to-day operations of the corporation is supported by a preponderance of the evidence. This was a small, closely held family corporation. Complete control over all the affairs of the corporation, including hiring and firing of help and establishing wage scales, time schedules and working conditions was exercised by Anita Castorina as president, and her husband, Luigino Castorina, as general manager. As such they were charged with the obligation of carrying out the working conditions set forth in the statutory scheme in the Walsh-Healey Act. The failure to perform the statutory public duty is not only a corporate liability but also the personal liability of each and every officer charged by reason of his or her corporate office with performing that duty. United States v. Islip Machine Works, Inc., 179 F.Supp. 585 (E.D.N.Y.1959) and United States v. Hudgins-Dize Co., Inc., 83 F.Supp. 593 (E.D.Va.1949). Defendants Anita Castorina and Luigino Castorina are jointly liable with the defendant corporation.

The motion for summary judgment is granted and the administrative order dated December 16, 1970 and filed December 22, 1970 is in all respects affirmed.

The Clerk is directed to enter judgment in favor of the plaintiff and against all the defendants in the sum of $4,094.15 together with interest at the rate of 7½% on the judgment from February 23, 1969. Trans World Airlines, Inc. v. Hughes, 449 F.2d 51 (2d Cir. 1971). It is

So ordered.